UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBYE BAKER, Personal Representative
for THE ESTATE OF STACEY BAKER,
deceased.

      Plaintiff,                           Case No. 04-CV-73679

v.                                           Honorable Patrick J. Duggan

CITY OF DETROIT, FIRE DEPARTMENT
EMERGENCY MEDICAL SERVICES
DIVISION-DETROIT EAST MEDICAL
CONTROL AUTHORITY, MARCUS
TOWNSEND and JOHN DOE I,

      Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 5, 2005.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

This matter is presently before the Court on Defendants City of Detroit, Fire Department Emergency Medical Services Division, Marcus Townsend and John Doe I's Motion for Summary Judgment, filed on June 6, 2005. The Court held a hearing on this matter on August 4, 2005. For the reasons set forth below, Defendants' Motion shall be granted.

**I.     Background**

**A. Factual Background**

On December 10, 2001, emergency medical technicians Marcus Townsend and Lindsey West were dispatched to Stacey Baker's home in Detroit, Michigan. According to Townsend, Baker complained that she was having difficulty breathing and had been having some difficulty breathing for several weeks. Baker asked to be taken to the hospital.

After Baker stepped into the ambulance she began to exhibit extreme respiratory discomfort and began panicking. (Townsend Dep. at 36). After listening to her breathing with a stethoscope, Townsend determined that she was having a "bronchial spasm." Townsend administered the first dose of epinephrine. (*Id.* at 39). According to Townsend, after the dose of epinephrine Baker began breathing a little better and allowed him to place an oxygen mask on her.

Four to five minutes later, because Townsend believed that Baker was "still in a very grave state," he administered a second dose of epinephrine. (*Id.* at 40). While Townsend administered the second dose, Lindsey began driving the ambulance toward St. John Hospital in Detroit, Michigan.

During the short drive to St. John, Townsend radioed the hospital, informed them that there was a "Code 1" situation–a 39-year-old female in extreme respiratory distress. (*Id.* at 42). According to Townsend, he was unable to check Baker's vital signs because by the time he finished calling St. John, the ambulance had already arrived at the hospital and Townsend had to prepare to remove Baker from the ambulance. (*Id.* at 43). Townsend admits that at no time before or after administering the epinephrine did he check Baker's vital signs. (*Id.*

2

at 35, 41, 43, 91).

Townsend brought Baker directly into the resuscitation room. It was nine minutes before a doctor arrived to examine Baker. According to Townsend, "[a]fter the nine minutes she was in full cardiopulmonary arrest," and "she had stopped breathing." (*Id.* at 47-48). The hospital staff was unable to revive Baker.

According to Pathologist George R. Nichols, Baker died as a result of cardiac rhythm disturbance following the administration of two 0.5 ml doses of 1:1,000 epinephrine. (Pl.'s Resp. Ex. 2).

After the incident, the Detroit East Medical Control Authority (DEMCA) reviewed Townsend's conduct and found:

1. The initial patient assessment was too limited, not considerate of multiple diagnoses and did not include an adequate physical assessment.

2. There was clear protocol violation involving the inappropriate use of epinephrine (1:1000). First, the use was contraindicated per protocol in a patient over 35 years of age. Second, the use per protocol is post-radio contact only. Third, the maximum dose per protocol is 0.3 mg SQ. Mr. Townsend administered 0.5 mg SQ bilaterally.

3. The run sheet documentation is poor, the IPS is not well documented and there were no vital signs documented.

(Pl.'s Resp. Ex. 3).

Townsend was placed on probation pending his completion of a Paramedic Refresher Course, four 12-hour shifts in the Emergency Department at Detroit Receiving Hospital, and passing the DEMCA paramedic certification examination.

### B. Procedural Background

On June 10, 2004, Plaintiff Rubye Baker ("Plaintiff"), as personal representative for

the estate of Stacey Baker, filed suit against Defendants, City of Detroit, Detroit Fire Department-Emergency Medical Services Division,[1] Detroit East Medical Control Authority,[2] Marcus Townsend, and John Doe I, in the Circuit Court for the Third Judicial Circuit of Michigan.[3]  On September 1, 2004, Defendants were served with Plaintiff's First Amended Complaint which alleged: (I) Malpractice; (II) Gross Negligence; (III) Violations of the Examination and Treatment for Emergency Medical Conditions and Women in Labor Act, 42 U.S.C. § 1395dd; (IV) Violations of the Civil Rights Act, 42 U.S.C. § 1983; (V) Intentional Tort; and (VI) Unlawful Deprivation of Right of Family Association.

On September 22, 2004, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) & (b).  On December 21, 2004, based upon stipulation of the parties, this Court dismissed Plaintiff's state law claims with prejudice.  Therefore, the only remaining claims for the purposes of this Motion for Summary Judgment are Plaintiff's federal claims.

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to

---

[1] Because a department, or a division, is not an entity that can be sued, the proper Defendant in this case is the City of Detroit.  *See McPherson v. Fitzpatrick*, 63 Mich. App. 461, 464, 234 N.W.2d 566, 568 (1975) ("A municipal department, board or commission . . . is unable to raise funds for payment and is not liable in tort.").

[2] This Defendant was dismissed per stipulation of the parties on December 8, 2004.

[3] Plaintiff has filed a separate suit in Wayne County Circuit Court against St. John Hospital and two St. John doctors, case no. 03-340451-NH, for medical malpractice arising from the same incident.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III.  Applicable Law and Analysis

The remaining federal claims are Count III, violations of 42 U.S.C. § 1395dd, Count IV, violations of 42 U.S.C. § 1983, and Count VI, Unlawful Deprivation of Right of Family

Association. The Court will address each of these remaining claims separately.

### A. Plaintiff's Claim Under the Examination and Treatment for Emergency Medical Conditions and Women in Labor Act, 42 U.S.C. § 1395dd

42 U.S.C. § 1395dd provides, in pertinent part:

**(a)   Medical screening requirement**

   In the case of a *hospital* that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd (emphasis added).

In this case, none of the Defendants is a "hospital" subject to this statute. Therefore, Defendants' Motion for Summary Judgment shall be granted as to Count III of Plaintiff's First Amended Complaint.

### B. Plaintiff's Claims Under the Civil Rights Act, 42 U.S.C. § 1983: Fourth, Eighth, and Fourteenth Amendment Violations

Plaintiff seeks to hold Defendants liable under 42 U.S.C. § 1983 for Townsend's conduct which allegedly violated Baker's constitutional rights. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To succeed on a 42 U.S.C. § 1983 claim, plaintiff must show defendants: (1) acted under color of state law; and (2) deprived plaintiff's decedent of his rights under the United

6

States Constitution." *Cartwright v. City of Marine City*, 336 F.3d 487, 491 (6th Cir. 2003).

1.  **Color of State Law**

In Count IV of her First Amended Complaint, Plaintiff alleges that Defendants Townsend and Doe, technicians/paramedics, acting under color of law, deprived decedent Baker of her constitutionally protected rights. (*See* First Am. Compl. ¶¶ 42-43). Defendants contend, however, that the EMS technicians/paramedics are private actors. (Br. in Supp. of Mot. at 5).

The central issue in determining whether an individual has acted "under color of state law" and, thus, is subject to suit under § 1983 is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982). The "under color of state law" requirement of § 1983 is treated the same as the "state action" requirement of the Fourteenth Amendment. *Id.* at 928, 102 S. Ct. at 2749. This requirement is meant "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 2786 (1982) (emphasis in original).

In response to Plaintiff's Motion to Vacate the Order of Dismissal of All State Claims, Defendants argued that the City of Detroit EMS is not a proprietary function and that the defense of governmental immunity is available to it to warrant the dismissal of all state law claims. (*See* Op. & Or. Denying Pl.'s Mot. to Vacate, May 16, 2005). In addition, in this Motion, Defendants argue that Defendant Townsend is entitled to qualified immunity because "at all times he was performing discretionary governmental functions in his medical

7

care and transport of the Plaintiff's decedent." (Br. in Supp. of Mot. at 10). Therefore, the Court believes that Plaintiff has shown that Defendants were acting under color of state law.

### 2. **Deprivation of Constitutional Rights**

42 U.S.C. § 1983 standing alone does not create substantive rights; a plaintiff must show that she "has been deprived of a right secured by the Constitution and laws [of the United States]." *Baker v. McCollan*, 443 U.S. 137, 140, 146-47, 99 S. Ct. 2689, 2692, 2695-96 (1979) (internal quotation omitted). The claimed constitutional bases for liability in this case are the Fourth, Eighth and Fourteenth Amendments.

#### a. **Defendants Townsend and Doe**

Defendants allege that summary judgment is appropriate because Defendants Townsend and Doe are entitled to qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (emphasis in original). Under the doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

In determining whether a defendant is entitled to qualified immunity, the court must initially decide whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If the defendant's conduct violated the plaintiff's constitutional right, the court must then determine whether the right in question was clearly established at the time the violation

8

occurred. *See id.* at 202, 121 S. Ct. at 2156. In this case, Plaintiff alleges that Defendants Townsend and Doe violated decedent Baker's Fourth, Eighth, and Fourteenth Amendment constitutional rights.

The Fourth Amendment provides:

> The right of people to be secure in their persons, houses, papers and effects, and against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Thus, the Fourth Amendment does not protect private citizens against all seizures, only those that are "unreasonable." U.S. Const. amend. IV. A "seizure" occurs where, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980).

In this case, Baker called 911 to report that she was having difficulty breathing. (*See* Townsend Dep. at 27). When the paramedics arrived, Plaintiff asked to go to the hospital and walked out to the ambulance herself. (*See id.* at 34). Although Plaintiff agrees that Baker got into the ambulance voluntarily, Plaintiff has argued that when Townsend administered the epinephrine, he was effectively placing Baker "in custody." However, there is nothing in the record to indicate that Plaintiff tried to get out of the ambulance at any time or that the epinephrine affected her ability to indicate to Defendants that she wanted to leave the ambulance. Therefore, because the Court does not believe that Baker was "in custody," no seizure occurred within the meaning of the Fourth Amendment.

In addition, Plaintiff alleges that Defendants were deliberately indifferent to Baker's

9

medical needs in the assessment and administration of drugs in violation of the Eighth Amendment. (*See* First Am. Compl. ¶ 42(c)). The Eighth Amendment's protection against cruel and unusual punishment, however, applies only to prisoners incarcerated after a criminal conviction. *Whitley v. Albers*, 475 U.S. 312, 318, 106 S. Ct. 1078, 1083-84 (1986); *Ingraham v. White*, 430 U.S. 651, 664-68, 97 S. Ct. 1401, 1408-11 (1977); *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986).

Finally, Plaintiff contends that Defendants violated the Fourteenth Amendment Due Process Clause by failing to provide Baker with proper emergency medical pre-hospital care. (*See* First Am. Compl. ¶ 42(a)). The Fourteenth Amendment's Due Process Clause forbids the state from depriving any person of life, liberty, or property without due process of law. The Constitution is a charter of negative rather than positive liberties. *Harris v. McRae*, 448 U.S. 297, 318, 100 S. Ct. 2671, 2688 (1980). As the Supreme Court has observed:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the States' power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means . . . . Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.

*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96, 109 S. Ct. 998, 1003 (1989) (citations omitted).

Plaintiff argues that a "special relationship" existed between decedent Baker and Defendants such that Defendants were under a constitutional duty to protect Baker. For

10

example, the Supreme Court has recognized that there is a constitutional duty to provide personal security when a person is in state custody, either through institutionalization or incarceration, because in those situations, an individual's liberty is restrained to such a degree that it renders him unable to care for himself. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 S. Ct. 285, 290-91 (1976). As the Court explained in *DeShaney*, this "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his behalf." *DeShaney*, 489 U.S. at 200, 109 S. Ct. at 1005.

In this case, the Court does not believe that Plaintiff has shown that Defendants limited Baker's freedom to act by transporting her by ambulance to the hospital. Defendants did not force or otherwise coerce her into their ambulance. Defendants merely made the ambulance available to Plaintiff and she entered it voluntarily. Therefore, Defendants were under no affirmative constitutional duty to provide any particular type of emergency medical services to her.

Plaintiff's reliance on *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir. 1995), is misplaced. In *Sargi*, the Court found that *no* special relationship existed. *Id.* at 911. In that case, the plaintiff brought suit against the Kent City Board of Education under 42 U.S.C. § 1983 after her daughter collapsed from heart failure while she was riding the school bus. *Id.* at 909. The bus driver, who knew that the child had suffered from seizures in the past, mistakenly believed that the child was experiencing a seizure and continued to drop off other children on the bus route. *Id.*

11

The plaintiff argued that when the driver restricted decedent's freedom to act, she was in the physical custody and control of the Board, which gave rise to an affirmative duty on the part of the Board to protect the decedent while she was on the school bus. *Id.* at 910. The Court concluded neither compulsory attendance laws nor the Board's knowledge of decedent's mental condition created a special relationship. *Id.* at 911. The Sixth Circuit found: "A special relationship can arise only when the *state* restrains an individual." *Id.* (emphasis in original).

Alternatively, Plaintiff argues that even if a special relationship did not exist, Defendants still had a constitutional duty to act because Defendants created or exacerbated an existing danger by administering the epinephrine.

The Court finds the case of *Bradberry v. Pineallas County*, 789 F.2d 1513, 1517 (11th Cir. 1986), instructive. In *Bradberry*, the Eleventh Circuit distinguished "between situations where the state actively places someone in danger and where the state fails to help someone already exposed to risk." *Id.* at 1517. The plaintiff in *Bradberry*, the mother of a swimmer who drowned off the Florida coast, brought an action under § 1983 alleging that the County violated her decedent's constitutional rights by inadequately training a lifeguard who unsuccessfully attempted to save him. Determining that the plaintiff failed to state a federal claim, the *Bradberry* Court stated:

> [W]e do not believe that due process is implicated when the state fails to help someone already in danger. To hold otherwise, we would have to read into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care. We decline to take such an extreme step.

*Id.* at 1517-18.

The Court went on to note that even if the attempted rescue heightened the peril the decedent faced, "such conduct, which may amount to a tort cognizable under *state* law, does not constitute a *constitutional* deprivation of life without due process." *Id.* at 1518 (emphasis in original). *See also Brown v. Commonwealth of Penn., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 477 (3d Cir. 2003) ("One might infer from the general rule that, although the State is not constitutionally required to provide rescue services, once the State undertakes a rescue, federal constitutional law requires that it do so competently. Such an inference, however, incorrectly conflates state tort law and federal constitutional law.").

Similarly, the Court finds that Baker suffered no constitutional deprivation in this case. Section 1983 does not make every tort committed by a state actor or under color of state law actionable in federal court. *Paul v. Davis*, 424 U.S. 693, 699-701, 96 S. Ct. 1155, 1159-60 (1976). Consequently, because Plaintiff has not shown that Defendants deprived Baker of any of her rights under the United States Constitution, Defendants are entitled to qualified immunity. Therefore, Defendants' Motion for Summary Judgment shall be granted as to Count IV of Plaintiff's First Amended Complaint.

**b. Defendant City of Detroit**

Moreover, even assuming *arguendo* that Plaintiff had established that Defendants Townsend and Doe deprived Baker of a constitutional right, Plaintiff has failed to establish that the constitutional deprivation resulted from a custom, policy, or practice of the City of Detroit. A municipality is a "person" subject to suit under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 700-01, 98 S. Ct. 2018, 2041 (1978); *see also Garner v.*

13

*Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1219 (1994). However, a municipality is not liable for every misdeed of its employees and agents, but rather, "it is when the execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38. Thus, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

Plaintiff contends that the City's failure to train its emergency medical technicians constituted deliberate indifference to the rights of Plaintiff's decedent. (Br. in Supp. of Resp. at 14). The U.S. Supreme Court has held that a city may be liable for inadequate training under § 1983 when the city's failure reflects "deliberate indifference" or a "conscious choice" by the municipality. *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 1204-05 (1989).

According to Chief Gary Kelly, the Superintendent of the E.M.S. Division with the Detroit Fire Department, DEMCA publishes protocols that govern E.M.S. technicians. (Kelly Dep. at 7-9). "In general, E.M.S. personnel must have met certain standards in order to get their license, and they must take continuing education in order to maintain or renew their licenses." (*Id.* at 10-11). New E.M.S. personnel are provided with a manual, which includes protocols, and are required to attend a 13-week academy. (*Id.* at 11-12). Advanced training includes training in pharmacology. (*Id.* at 19-20).

14

Moreover, according to Marcus Townsend, the City of Detroit hired him as a basic emergency medical technician in 1993, after he had already been a licensed EMT since 1988 or 1989. (Townsend Dep. at 11, 18). Townsend became an advanced technician in 1997. (*Id.* at 21). Townsend testified that DEMCA had protocols which he had to satisfy. (*Id.* at 25). After Townsend's conduct on December 10, 2001, Townsend was disciplined for breaching protocols. (*Id.* at 71-73; Resp. Ex. 3). Consequently, Plaintiff has not presented any evidence which would persuade a reasonable juror that the City failed to train its emergency technicians or that the alleged failure to train amounted to either deliberate indifference or a conscious choice.

In addition, Plaintiff contends that the City had a policy "to retain emergency medical technicians such as Defendant Marcus Townsend, who administered the drug epinephrine without authority to do so as required by the governing protocols." (Br. in Supp. of Resp. at 14). The Supreme Court held in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427 (1985), that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Id.* at 823-24, 105 S. Ct. at 2436. The Court found that when the policy relied upon by the plaintiff "is not itself unconstitutional," such as a city's policy of failing to investigate or discipline its officers, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *Id.* at 824, 105 S. Ct. at 2436. Thus, proof of the existence of the policy prior

15

to the incident is necessary because "[w]rongful conduct after an injury cannot be the proximate cause of the same injury . . . [and] *Monell* forbids a finding of [municipal] liability except where the misconduct is pursuant to an official policy or custom and is also the 'moving force' behind the plaintiff's injury." *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987).

In this case, Plaintiff has failed to provide the Court with any evidence that a policy of retaining paramedics who administered epinephrine without the authority to do so existed before the incident involving Baker.[4] Moreover, even if Plaintiff did have evidence that the City of Detroit had previously retained a paramedic who administered epinephrine without the proper authorization, as noted above, Plaintiff has failed to establish the deprivation of a constitutional right. Consequently, Defendants' Motion for Summary Judgment shall be granted as to Plaintiff's claim that the City of Detroit violated 42 U.S.C. § 1983.

### C. Unlawful Deprivation of Right of Family Association

Plaintiff Rubye Baker alleges that Defendants unlawfully deprived her of her 14th Amendment right to associate with her daughter, Stacey Baker. (Pl.'s Br. in Opp. to Defs.' Mot. at 16). The relevant portion of Plaintiff's First Amended Complaint alleges:

> 58. The Due Process Clause of the 14th Amendment protects a parent's relationship with her child from unlawful interference by state agents acting under Color of Law.
>
> 59. Defendant's action in causing the wrongful death of Plaintiff's decedent,

---

[4] At the hearing, counsel for Plaintiff indicated that she had evidence that another paramedic who administered epinephrine without authorization was retained. However, counsel has not provided the Court with any documentation to indicate that this occurred *before* the incident in this case.

16

> as aforesaid, constituted a deprivation of Plaintiff's constitutional rights, protected by the Due Process Clause of the 14th Amendment, to family association with her child.
>
> 60. That, for purposes of this litigation and the vindication of Plaintiff's constitutional right to family association with her daughter, it is irrelevant that Plaintiff's decedent had attained her majority.

(First Am. Compl. ¶¶ 58-60).

Plaintiff has not offered any authority from the Sixth Circuit in support of her claim. Instead, Plaintiff cites to *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). In *Bell*, the Seventh Circuit recognized a father's constitutional right to recover for the loss of the companionship of his adult son when his son was killed by a police officer during a chase. *Id.* at 1243-44. The Seventh Circuit found that the father could recover under § 1983 for the violation of his substantive due process right to associate with his son. *Id.*

However, the Seventh Circuit recently overruled this decision in *Russ v. Watts*, No. 04-3628, 2005 WL 1618831, *1 (7th Cir. July 11, 2005). In *Russ*, the Seventh Circuit found that parents have no constitutional right to recover for the loss of society and companionship of their children. *Id.* at *8. The Court reasoned that its earlier decision in *Bell* was not well grounded in the Constitution or Supreme Court case law: "The Supreme Court has recognized violations of the due process liberty interest in the parent-child relationship only where the state took action specifically aimed at interfering with that relationship." *Id.* at *5.

Moreover, the Court agrees with the result reached in *Broadnax v. Webb*, 892 F. Supp. 188 (E.D. Mich. 1995). In *Broadnax*, children of a deceased woman brought a § 1983 civil rights suit based on loss of companionship. *Id.* at 188. The Court declined to recognize such a claim and granted defendants' motion for summary judgment. *Id.* at 190. The Court

17

reasoned:

> [T]he court finds that a constitutional violation is something personal to the individual injured, and that a violation against a member of a family does not confer standing upon all other members of that particular family. Even were such a claim for loss of companionship limited to close family members like parents or children, the fact remains that liability would be expanded handsomely.
>
> * * *
>
> To recognize such a claim would needlessly increase ligation without further deterring wrongful conduct by state actors.

*Id.*

The Court agrees that recognizing Plaintiff's claim for unlawful deprivation of family association would needlessly expand litigation. Therefore, Defendants' Motion for Summary Judgment shall be granted as to Count VI of Plaintiff's First Amended Complaint.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

                                                     _____
                                                     s/PATRICK J. DUGGAN
                                                     UNITED STATES DISTRICT JUDGE

Copies to:
Benjamin Whitfield, Jr., Esq.
Paula J. Cole, Esq.

18